IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NYDIA ESTADES NEGRONI | * |
| Plaintiff | * Civil No. 98-1645(SEC) |
| v. | * |
| THE ASSOCIATES CORP. OF NORTH AMERICA, et al. | * |
| Defendants | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**OPINION AND ORDER**

This is an action brought under the American with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and various provisions of Commonwealth law. In the complaint, plaintiff "seeks equitable relief, liquidated, compensatory, and punitive damages, costs and attorneys fees for the age discrimination, hostile work environment, disability discrimination and for whistle blowing reprisals, . . . due to defendants' . . . harassment and discharge of her (sic); for the emotional distress and mental anguish intentionally inflicted upon her; for the breach of . . . [defendants'] obligation to deal with her in good faith; and for the failure by . . . [defendants'] to provide her with a reasonable accommodation for her disability." (**Docket # 1**). Pending is co-defendant Associates Financial Services Company of Puerto Rico, Inc.'s (hereinafter "Associates") "Motion to Dismiss and/or for Summary Judgment." (**Docket # 7**). For the reasons set forth below, defendant's motion (**Docket # 7**) is denied in part and granted in part.

First, however, a procedural aspect must be addressed. Soon after Associates filed the instant motion, plaintiff requested that it be held in abeyance pending the completion of discovery. (**Docket**

AO 72A
(Rev. 8/82)

Civil No. 98-1645(SEC)                                                                                           2

# 8). After considering the parties' subsequent filings[1] we find that, at this stage, Associates' motion should more properly be construed as a motion to dismiss and we proceed to rule upon it accordingly. See In the Matter of: Motions for Summary Judgment and Analogous Motions to Dismiss, Misc. No. 96-008, at 3 ("From the Court's perspective, it is a wasteful misuse of the time of both counsel and the Court for a party to file a motion for summary judgment before using requests for admissions or other discovery devices to ascertain whether the factual assertions on which the motion must be based are in dispute."). In so doing, we refrain from considering the supplementary materials attached to defendant's motion.[2]

---

[1] See "Opposition to Plaintiff's 'Motion Requesting that Resolution of Motion to Dismiss and/or for Summary Judgment . . .'" (**Docket # 8**), "Reply to Co-defendant's Opposition to Plaintiff's 'Motion Requesting that Resolution of Motion to Dismiss and/or for Summary Judgment Be Held in Abeyance" (**Docket # 11**), "Motion Pursuant to Rule 56(f) of Civil Procedure" (**Docket # 14**), "Sur-Reply to Plaintiff's Reply to Opposition to 'Motion Requesting that Resolution of Motion to Dismiss and/or for Summary Judgment Be Held in Abeyance . . .'" (**Docket # 18**), "Opposition to 'Plaintiff's Motion Pursuant to Rule 56(f) of Civil Procedure' and Reply to 'Plaintiff's Opposition to Motion to Dismiss and Memorandum in Support Thereof.'" (**Docket # 19**).

[2] See Garita Hotel Limited Partnership, Etc. v. Ponce Federal Bank, 958 F.2d 15, 18 (1st Cir. 1992) (suggesting that in order to avoid conversion of a Rule 12(b)(6) motion into a Rule 56 motion, the trial court should expressly reject any supplementary materials filed by the moving party); see also Whiting v. Maiolini, 921 F.2d 5, 7 (1st Cir. 1990) (holding that it is inappropriate to convert a Rule 12(b)(6) into a Rule 56 motion when nonmovant has not been afforded opportunity to respond to unannounced conversion, discovery has barely begun, and defendant has not answered the complaint); Maldonado v. Domínguez, 137 F.3d 1, 6 (1st Cir. 1998) (in order to avoid conversion of a Rule 12(b)(6) motion into a Rule 56 motion, district court must ignore matters outside the pleadings); Rodríguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997) (same); Vega-Rodríguez v. Puerto Rico Telephone Co., 110 F.3d 174, 177 (1st Cir. 1997) (same); but see Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (determining documents that "defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.") (internal quotation marks and citation omitted).

Civil No. 98-1645(SEC)                                                                                                          3

**Motion to Dismiss Standard**

In assessing whether dismissal pursuant Fed. R. Civ. P. 12(b)(6) for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957), quoted in Davis v. Monroe County Bd. of Education, 119 S. Ct. 1661, 1676 (1999). See also Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 52 (1st Cir. 1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage. To survive a motion to dismiss, a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle, 142 F.3d at 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). See also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Moreover, courts "will not

AO 72A
(Rev. 8/82)

accept a complainant's unsupported conclusions or interpretations of law." <u>Washington Legal Foundation v. Massachusetts Bar Foundation</u>, 993 F.2d 962, 971 (1st Cir. 1993).

**Factual Background**

We set forth the relevant facts as alleged in the complaint, drawing all reasonable inferences in plaintiff's favor. <u>See</u> <u>Doe v. Walker</u>, 193 F.3d 42, 42 (1st Cir. 1999). Plaintiff Nydia Estades Negroni (hereinafter "Estades") was employed by Associates from March, 1983, until February, 1997, when she was fired. **(Docket # 1, at ¶ 10)**. She was fifty years old then, and held the position of Compliance Officer at one of Associates' branches in Puerto Rico. **(Id. at ¶¶11, 12)**. Since the beginning of her employment at Associates, Estades performed her duties diligently, sometimes even beyond the scope of her obligations "during non-working hours and without pay," earning "various accolades and promotions." **(Id. at ¶¶13-14)**.

After termination, Estades was replaced by a younger employee, such replacement constituting "only one link in a chain of repeated acts of substitution of older employees with younger ones at Associates." **(Id. at ¶¶ 15-16)**. As a result of her discharge, Estades "became apprehensive about her future work possibilities and has suffered from severe depression and continuous nervousness." **(Id. at ¶ 17)**. She also "suffered great emotional distress and mental anguish." **(Id. at ¶ 18)**. Associates allegedly fired Estades because "she abandoned her position," even though Associates knew "that the continued acts of harassment against her in the job had caused her to seek psychiatric treatment for a severe depression." **(Id. at ¶ 19)**. Her dismissal, Estades claims, was "in reckless disregard of the truth and/or motivated by a discriminatory animus."

Estades was also subjected to a hostile work environment in reprisal for having discovered an alleged "pattern of fraudulent and racketeering activities, including but not limited to the

**Civil No. 98-1645(SEC)**                                                                                              5

mishandling of clients' funds and accounts, use of said funds by several employees at . . . Associates, misappropriation of account insurance funds, use of the mail and telephone to conduct all these activities all for their private use and/or for the operation of . . . Associates, an enterprise engaged in and affecting interstate commerce." **(Id. at ¶ 21)**. She contends to have reported "these fraudulent and racketeering activities to her supervisor, Mr. Juan Irizarry, who then received specific instructions from the company president, Mr. Joseph Ramos, to force . . . [her] and other employees to misrepresent contracts to clients and cover up the fraudulent acts committed by defendants," under threat of termination. **(Id.)**. Because she refused to comply with these demands, Estades was subjected to "continued acts of hostility, verbal aggression, threats to cause her harm and deep emotional harassment by the management, including but not limited to Mr. Joseph Ramos, which eventually led to her fragile emotional and psychiatric condition." **(Id.)**. Estades asserts, moreover, that Associates denied her reasonable accommodation by refusing to hire an assistant, "in spite of her mental disability." **(Id. at ¶¶ 27, 28)**.

Liberally construed, Estades' averments could be read as claiming that she developed a mental disability due to the harassment that she was subjected to in retaliation for having uncovered and reported certain purportedly fraudulent acts committed by Associates employees; that Associates further discriminated against her by denying her reasonable accommodation in refusing to hire an assistant and eventually fired her because of her age. On its part, Associates seeks the dismissal of this action essentially on the basis that Estades' allegations fail to make out a *prima facie* case of discrimination under either the ADEA or the ADA, and on the ground that Estades lacks standing under RICO.

Civil No. 98-1645(SEC)                                                                                          6

**Whether Plaintiff has Sufficiently Plead a Claim under the ADEA**

Under the ADEA, "the plaintiff bears the ultimate burden of proving that he would not have been fired but for his age." Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 25 (1st Cir. 1996) (citation and internal quotation marks omitted). Absent direct evidence of discrimination, a plaintiff must rely on the now familiar burden-shifting framework enunciated in McDonnell-Douglas v. Green, 411 U.S. 792, 802-05 (1973). Under this standard, as later adapted by subsequent caselaw, a plaintiff may establish a *prima facie* case of age discrimination in violation of the ADEA by showing that he or she: (1) was within the protected age group—that is, over forty years of age; (2) met the employer's employment expectations; (3) was actually or constructively discharged; and (4) that the employer had a continuing need for the same services, and they subsequently were performed by a person with the same or similar qualifications as the plaintiff. See Cardona-Jiménez v. Bancomercio de Puerto Rico, 174 F.3d 36, 41 (1st Cir. 1999); Brennan v. GTE Government Systems Corp., 150 F.3d 21, 26 (1st Cir.1998). As to the fourth factor, it is now settled that a plaintiff does not have to be replaced by someone outside of the protected class in order to make out a prima facie case of age discrimination. "The fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out *because of his age*." O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996). Since the ADEA "prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than the fact that the plaintiff was replaced by someone outside the protected class." Id. at 313.

Once a plaintiff meets this modest burden, a presumption of discrimination is created. To rebut this presumption the employer need only to articulate a legitimate nondiscriminatory reason

Civil No. 98-1645(SEC)                                                                                                    7

for terminating the employee. If the employer does so, the presumption vanishes and it is up to the court to determine whether the evidence supports a finding that the employer's decision to terminate the plaintiff was motivated by an intentional age discrimination. See Cardona-Jiménez, 174 F.3d at 41; Pages-Cahue v. Iberia Líneas Aéreas de España, 82 F.3d 533, 536 (1st Cir. 1996).

In this case, it is not disputed that Estades meets the first prong of the *prima-facie*-case standard, as she was fifty years old when Associates fired her. **(Docket # 1, at ¶ 11; Docket # 7, at 13)**. Furthermore, for purposes of this motion, Associates concedes that Estades satisfies the third prong, that is, that she was either actually or constructively discharged. **(Docket # 7, at 13)**. Associates contends, however, that Estades' allegations are insufficient to meet the second and fourth requirements.

Regarding the second factor—meeting the employer's employment expectations—Estades' allegations, which we must accept as true, are that she performed her duties diligently, sometimes even beyond the scope of her obligations "during non-working hours and without pay," and that she received "various accolades and promotions." **(Docket # 1, at ¶¶13-14)**. Associates counters that Estades has failed to properly plead that she performed her job as expected, since she "avers that at the time of the alleged termination she was suffering a mental condition which prevented her from performing her job (unless aided by and assistant)." **(Docket # 7, at 13)**. This, Associates contends, is tantamount to an admission that she "was not qualified to do her job alone and thus cannot be said to meet . . . legitimate expectations of job performance." **(Id.)**. It is wrong.

Estades does not aver, as Associates claims, that she could not perform her duties unless aided by someone else. This is rather an inference which can be drawn from Estades allegations. Moreover, the relevant paragraph in the complaint from which such an inference can be drawn is

Civil No. 98-1645(SEC)                                                                                         8

immediately followed by an assertion that "Estades was an otherwise qualified employee who was denied a reasonable accommodation." Meeting the employer's expectations is also an element of a *prima facie* case of disability discrimination under the ADA, as the same burden-shifting framework used in ADEA cases is also used in cases brought under the ADA, as discussed below. In ADA cases, however, the plaintiff must allege that he or she met the employer's expectations with or without reasonable accommodation. Since Estades is also claiming disability discrimination, we take her averments as directed to plead a cause of action under the ADA.³ Associates inference may be warranted due to the complaint's structure, but Rule 12(b)(6) "is not designed to correct inartistic pleadings." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 296 (2d ed. 1990).

As to the fourth factor—that the employer sought a replacement with roughly similar skills or qualifications—Estades claims only that she was "substituted by a younger employee." (**Docket # 1, at ¶ 15**). Associates contends that this allegation does not suffice the fourth factor because Estades does not aver that her replacement was an equally-qualified individual. (**Docket # 7, at 14**). In her opposition to Associates' motion to dismiss, Estades explains that she did not make any allegation in the complaint regarding her replacement's qualifications because this information is in Associates possession and will be obtained in discovery. She argues, furthermore, that the Court should infer from her allegations that she was replaced by someone less qualified.

We think that Estades' allegations pass muster under the Rule 12(b)(6) standard, her failure to make any allegations as to the qualifications of her replacement notwithstanding. Rule 12(b)(6)

---

³ It must be noted that Estades allegations of denial of reasonable accommodation are contained in a section of the complaint specifically setting forth an ADA claim. (**Docket # 1, Section B**).

**Civil No. 98-1645(SEC)** 9

"must be read in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim in federal court and calls for 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" 5A Wright & Miller, supra § 1356, at 296. Estades averments meet this liberal standard. Moreover, any lack of specificity in Estades' allegations would be better addressed through a more definitive statement under Rule 12(e), which Estades is hereby **ORDERED** to provide Associates with after initial discovery. Having found that Estades has established a *prima facie* case of age discrimination under the ADEA, Associates' motion to dismiss this claim must be denied.

**Whether Plaintiff has Sufficiently Plead a Claim under the ADA**

It is not clear from the complaint whether Estades is claiming that she was fired because of her disability or that she was simply denied reasonable accommodation. The distinction is rather important, as the recent decision by the First Circuit in Higgins v. New Balance Athletic, Inc., 1999 WL 907538 (1st Cir.) makes clear. In that case, the circuit court held that unlike in respect to claims for disparate treatment, "the McDonnell Douglas scheme is inapposite in respect to" claims for failure to accommodate under the ADA. This is so because failure-to-accommodate claims, unlike disparate-treatment claims[4] do not require proof of a discriminatory animus. Id. at *8.

Disparate-treatment claims rely on 42 U.S.C. § 12112(a), which provides that "[n]o covered entity shall discriminate against a qualified individual because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Failure-to-

---

[4] See, e.g., Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir.1998); Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir.1994) (requiring proof of a particularized discriminatory animus).

Civil No. 98-1645(SEC)                                                                    10

accommodate claims, however, are predicated on § 12112(b)(5)(A), which defines the term "discriminate" as including "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability . . ., unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." As the First Circuit held in Higgins, the construction of "discriminate" set forth in § 12115(b)(5)(A) "does not require that an employer's actions be motivated by a discriminatory animus directed at the disability. Rather, any failure to provide reasonable accommodations for a disability is necessarily 'because of a disability . . . .'" 1999 WL 907538, at *8. Thus, "an employer who knows of a disability yet fails to make reasonable accommodations violates the statute, no matter what its intent, unless it can show that the proposed accommodations would create undue hardship for its business." Id.

In order to survive a Rule 12(b)(6) motion for failure-to-accommodate, a plaintiff needs to allege facts showing (1) he or she is a qualified individual with a disability within the meaning of the ADA, (2) that the employer knew of his or her disability, and (3) that in spite of knowing of it, the employer failed to accommodate the plaintiff's disability. Cf. Higgins, 1999 WL 907538, at *9 (finding that plaintiff was able to survive summary judgment by stating in an affidavit, "that he had a hearing impairment, that . . . [his employer] knew of it, and that . . . [the employer] nonetheless failed to accommodate him . . . .").

In this case, Estades' allegations may be read, albeit very liberally, as meeting these "rather undemanding requirements." Id. Estades avers that Associates allegedly terminated her because she "abandoned her position," even though it knew that this was so because she suffered from "severe depression," which, as Associates also knew, "had caused her to seek psychiatric treatment." (**Docket**

Civil No. 98-1645(SEC)                                                                                                   11

# 1, at ¶ 19). In spite of this severe depression which Estades asserts was mentally disabling, Associates denied her reasonable accommodation in refusing to hire an assistant. (**Id. at ¶¶ 27, 28**). Therefore, Estades' failure-to-accommodate claim should not be dismissed. In this regard, Associates' motion to dismiss must be denied.

Now, to meet the <u>McDonnell-Douglas</u> standard as applied in disparate treatment cases under the ADA, a plaintiff must establish "(1) that he or she suffers from a 'disability' within the meaning of the Act; (2) that he or she was able to perform the essential functions of the job, either with or without reasonable accommodation; and (3) that the employer discharged him or her in whole or in part because of that disability." <u>Feliciano v. State of Rhode Island</u>, 160 F.3d 780, 784 (1st Cir. 1998) (citation omitted). Estades' averments, taken as true, also pass muster under Rule 12(b)(6): she alleges that at the time of the events in question she was—and still is—mentally disabled, that she was able to perform the functions of her job with reasonable accommodation, and that her termination was "motivated by a discriminatory animus" directed, as it may be inferred from the complaint, at her mentally-disabling depression. (**Docket # 1, at ¶¶ 13, 14, 19, 26, 27, 28**). Therefore, Associates motion to dismiss Estades' disparate treatment claim under the ADA must also be denied.

**Whether Plaintiff has Stated a Claim under RICO**

Estades claims that she was subjected to a hostile work environment in retaliation for having discovered an alleged "pattern of fraudulent and racketeering activities, including but not limited to the mishandling of clients' funds and accounts, use of said funds by several employees at . . . Associates, misappropriation of account insurance funds, use of the mail and telephone to conduct all these activities all for their private use and/or for the operation of . . . Associates, an enterprise engaged in and affecting interstate commerce." (**Id. at ¶ 21**). She alleges to have reported "these

**Civil No. 98-1645(SEC)**                                                                                                       12

fraudulent and racketeering activities to her supervisor, Mr. Juan Irizarry, who then received specific instructions from the company president, Mr. Joseph Ramos, to force . . . [her] and other employees to misrepresent contracts to clients and cover up the fraudulent acts committed by defendants," under threat of termination. (**Id.**). Because of her refusal to comply with these demands, Estades was allegedly subjected to "continued acts of hostility, verbal aggression, threats to cause her harm and deep emotional harassment by the management, including but not limited to Mr. Joseph Ramos, which eventually led to her fragile emotional and psychiatric condition." (**Id.**).

RICO permits a person "injured in his business or property by reason of a violation of section 1962 . . . [of the Act] to sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). Section 1962(c) in turn makes it unlawful for "any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." Id. § 1962(c). Section 1961, moreover, defines what "racketeering activity" means, while further requiring that a "pattern of racketeering activity" consist "of at least two acts of racketeering activity." Id. § 1961(1), (5). Estades' averments purportedly come within the aegis of these statutory provisions; that is, her complaint could be read as asserting injury in the form of having been wrongfully discharged in retaliation for having discovered, and reported to her superiors, certain allegedly fraudulent acts committed by some of her co-workers.

The First Circuit has "consistently interpreted the statutory requirement that a culpable person be 'employed by or associated with' the RICO enterprise as meaning that the same entity cannot do double duty as both the RICO defendant and the RICO enterprise." Miranda v. Ponce Federal Bank, 948 F.2d 41, 44 (1st Cir. 1991). See also United States v. London, 66 F.3d 1227, 1244 (1st Cir.

**Civil No. 98-1645(SEC)** 13

1995); Libertad v. Welch, 57 F.3d 428, 442 (1st Cir. 1995); Arzuaga-Collazo v. Oriental Fed. Sav. Bank, 913 F.2d 5, 6 (1st Cir. 1990); Odishelidze v. Aetna Life & Casualty Co., 853 F.2d 21, 23 (1st Cir. 1988); Schofield v. First Commodity Corp., 793 F.2d 28, 29-30 (1st Cir. 1986). The circuit court also has held that "Section 1962(c) does not recognize corporate liability on the enterprise's part under a theory of *respondeat superior*, even though individual officers or employees of the enterprise, acting within the scope and course of their employment, may themselves be culpable." Miranda, 948 F.2d at 45 (citation omitted). Inasmuch as Associates is admittedly the RICO enterprise (**Docket # 1, at ¶ 21**), it cannot "do double duty" and be the RICO defendant as well. Moreover, it cannot be held responsible under principles of *respondeat superior* liability, regardless of whether its employees themselves may be culpable.[5] Therefore, Estades' claim of retaliatory dismissal pursuant to RICO's private-right-of action provision must fail. Associates motion to dismiss this claim must granted.[6]

**Whether the Court should Retain Jurisdiction over Plaintiff's State-Law Claims**

Associates' premised its argument for the dismissal of Estades' State-law claims on the assumption that the Court would dismiss all of her federal-law claims. However, having determined that Estades has pled a *prima facie* case of both age and disability discrimination under federal law, we shall retain supplemental jurisdiction over Estades' State-law claims. See 28 U.S.C. § 1367(c).

**Conclusion**

The Court finds that plaintiff has established a *prima facie* case of both age and disability discrimination under the ADEA and the ADA, respectively. Accordingly, defendant's motion to

---

[5] We note that although in her complaint Estades particularly mentions Juan Irizarry, her supervisor, and Joseph Ramos, Associates president, as possibly culpable RICO defendants, she has not made any of them a party to this action.

[6] Having so determined, the Court refrains from addressing whether or not Estades has so-called standing under RICO.

dismiss is hereby **DENIED** as to these claims. The Court finds, however, that plaintiff has failed to state a claim under RICO. Accordingly, co-defendant's motion to dismiss is hereby **GRANTED** as to this claim. For the foregoing reasons, co-defendant Associates Financial Services Company of Puerto Rico, Inc.'s motion to dismiss (**Docket # 7**) is hereby **DENIED IN PART** and **GRANTED IN PART**.

**Other Matters**

Pursuant to Fed. R. Civ. P. 12(a)(4)(A), co-defendant Associates Financial Services Company of Puerto Rico, Inc. is hereby **ORDERED** to file its answer to the complaint **within ten (10) days** after notice of this opinion and order.

Moreover, the Court notes that there is no evidence on the record that Estades served process upon all the parties named as defendants in this action. Besides Associates Financial Services Company of Puerto Rico, Inc., the following parties are also named as defendants in the complaint's caption: The Associates Corp. of North America, Associates First Capital Corp., Associates Corporation of Puerto Rico, and various other unnamed defendants. The complaint was filed on June 5, 1998. (**Docket # 1**). Summonses for Associates First Capital Corp. and Associates Corp. of Puerto Rico were issued and served on that date. (**Docket # 2**). However, on August 13, 1998, Estades requested the issuance of new summonses for said co-defendants, as the original summonses were improperly served. (**Docket # 6**). New summonses were issued on August 28, 1998. As of today, however, Estades has failed to effect service. Therefore, pursuant to Fed. R. Civ. P. 4(m), Estades is hereby **ORDERED** to effect service of process upon co-defendants Associates First Capital Corp. and Associates Corp. of Puerto Rico on or before **January 12, 2000**. Failure to comply with this

**Civil No. 98-1645(SEC)**                                                                 15

order may result in the dismissal of the complaint as it pertains to said co-defendants. In addition, Estades will have until **February 14, 2000**, to substitute all unnamed defendants.

On another matter, the Court notes that discovery in this case has been vigorously contested, particularly the discovery of materials purportedly related to plaintiff's RICO claim. As the Court has dismissed this claim, no discovery will be permitted in this regard. However, as set forth in the Case Management Order which is being issued simultaneously with this opinion and order, the parties will have until **February 28, 2000**, to conclude discovery pertaining to plaintiff's remaining claims. Also set in the Case Management Order is the deadline for filing motions for summary judgment. If the any of the parties anticipates moving for summary judgment, they should bear in mind that the Court is particularly concerned with the following issues already advanced by defendant: (1) whether plaintiff may be considered to be disabled within the meaning of the ADA, even though she represented to be totally disabled in applying for long-term disability benefits, (2) whether or not plaintiff was actually discharged, and (3) whether providing the requested reasonable accommodation would have created undue hardship for defendant's business. The parties should also address what bearing, if any, do the following decisions recently issued by the Supreme Court have on this case: Murphy v. United Parcel Service, Inc., 119 S. Ct. 2133 (1999); Sutton v. United Air Lines, Inc., 119 S. Ct. 2139 (1999); and Albertsons, Inc. v. Kirkingburg, 119 S. Ct. 2162 (1999).

Finally, in light of today's rulings, the following pending motions are **MOOT**: Plaintiff's "Motion Requesting that Resolution of Motion to Dismiss and/or for Summary Judgment Be Held in Abeyance Pending Completion of Discovery and/or for Extension of Time to File Opposition" (**Docket # 8**), "Motion Pursuant to Rule 56(f) of Civil Procedure" (**Docket # 14**), "Motion to Compel

**Civil No. 98-1645(SEC)** 16

Discovery" (**Docket # 21**), "Urgent Motion to Compel Discovery and Requesting Initial Scheduling Order" (**Docket # 22**), and defendant's "Motion for Protective Order" (**Docket # 20**).

**SO ORDERED.**

In San Juan, Puerto Rico, this _30_ TH day of December, 1999.

SALVADOR E. CASELLAS
United States District Judge

AO 72A
(Rev. 8/82)