IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NYDIA ESTADES NEGRONI,

Plaintiff

v.                                                              CIVIL 98-1645 (JAG)

THE ASSOCIATES CORP. OF NORTH
AMERICA, et al.,

Defendants

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on defendants' motion for summary judgment filed on July 14, 2000. (Docket No. 45.) The plaintiff has filed a complaint alleging unlawful discrimination based on age and disability in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (ADEA); the Americans With Disabilities Act of 1990, 42 U.S.C. § 12182 et seq. (ADA); and provisions of state laws, including Law 80 and Law 100. In response to defendants' motion for summary judgment, plaintiff filed her opposition to defendants' motion for summary judgment on August 15, 2000. (Docket Nos. 49 and 50.) Defendants then filed a reply to opposition to motion for summary judgment on October 4, 2000 (Docket No. 60) and plaintiff filed a sur-reply to defendants' reply on December 20, 2000. (Docket No. 71.) After reviewing the record I recommend that defendants' motion for summary judgment be granted.

I. Summary Judgment Standard

Summary Judgment is entered only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S.




CIVIL 98-1645 (JAG)                              2

317, 322 (1986); Straughn v. Delta Air Lines, Inc., 2001 WL 521360, at *4 (N.H. May 17, 2001); see Abbadessa v. Moore Bus. Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993). To find in favor of the defendants, this court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

In a motion for summary judgment, the moving party must demonstrate "an absence of evidence to support the nonmoving party's case" to discharge its burden of proof. Celotex Corp. v. Catrett, 477 U.S. at 325. Then the nonmoving party adopts the burden of showing that there is a factual disagreement. "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 332 (1st Cir. 1997) (quoting Leblanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)). Plaintiff may not rely on "conclusory allegations, improbable inferences, and unsupported speculation." Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). In short, plaintiff must come "forward with more than a trivial, 'scintilla of evidence' or creat[e] more than a 'metaphysical doubt as to the material facts.'" Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997). Only at this point does the court construe material facts and reasonable inferences in favor of the non-moving party. Id.

In the District Court of Puerto Rico, Local Rule 311.12 requires a motion for summary judgment to be accompanied by a separate, short, and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute. These facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material fact establishing a

CIVIL 98-1645 (JAG) 3

genuine issue in dispute. Local Rules, United States District Court for the District of Puerto Rico, Local Rule 311(12) (Michie 1996); see Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 26 (1st Cir 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727. See also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001). These facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having to "ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727. Failure to comply with this rule may result in a judgment in favor of the opposing party. Id. Both parties have filed their factual statements. The following uncontested facts establish that there are no genuine issues of material fact:

1. Plaintiff was hired by Associates Financial Services of Puerto Rico, Inc. (hereinafter "Associates") in 1986. (Docket No. 45, Exhibit 15 at 11, Exhibit 1, ¶ 3.)

2. As an employee of Associates, plaintiff was covered by an employee benefits policy (hereinafter "the Policy") which included short-term disability benefits and a long-term disability benefits plan (hereinafter "LTD"). (Docket No. 45, Exhibit 1, ¶¶ 2-4.)

3. The Policy was administered by Associates Corporation of North America, and managed by Aetna US Healthcare (hereinafter "Aetna") and previously by Prudential Healthcare Group (hereinafter "Prudential"). (Docket No. 45, Exhibit 1, ¶¶ 2-4.)

4. Between 1989 and 1990, plaintiff became aware that some of her coworkers at Associates' Arecibo I branch were carrying out some financial irregularities regarding loans. (Docket No. 45, Exhibit 15 at 13.)

CIVIL 98-1645 (JAG)                                  4

5. Plaintiff reported these irregularities in 1992 to Mr. Juan Irrizary, Group Assistant Vice President at Associates through his secretary, Ms. Haydée López. (Docket No. 45, Exhibit 15 at 31, 58.)

6. As a result of plaintiff's allegations of fraud, several audits were performed, and in 1993, several of plaintiff's co-workers, including her supervisors, were fired. (Docket No. 45, Exhibit 15 at 57, 63.)

7. In March 1996, plaintiff went to the doctor because she was having chest pains. (Docket No. 45, Exhibit 15 at 96.)

8. The doctor diagnosed her as having a depression and recommended that she report to the State Insurance Fund. (Docket No. 45, Exhibit 15 at 98.)

9. On March 21, 1996, plaintiff reported to the State Insurance Fund. (Docket No. 45, Exhibit 1, ¶ 5, Exhibit 2.)

10. On that date, she was examined and the State Insurance Fund found her disabled, submitting plaintiff to medical treatment on leave. (Docket No. 45, Exhibit 3.)

11. On April 9, 1996, plaintiff requested short-term disability benefits under the Policy. (Docket No. 45, Exhibit 4, Exhibit 15 at 101.)

12. From March 1996 to September 1996, plaintiff received Associates' short-term disability benefits, which constituted 100% of her salary. (Docket No. 45, Exhibit 15 at 101-02.)

13. Plaintiff received short-term disability payments under the Policy until the maximum date available. (Docket No. 45, Exhibit 1, ¶ 16.)

14. On May 2, 1996, Ms. Carmen I. Hernández, Social Worker for the State Insurance Fund, interviewed plaintiff in connection with her request for treatment. (Docket No. 45, Exhibit 20.)

CIVIL 98-1645 (JAG)                                    5

15. In her report, Mrs. Hernández states that plaintiff told her that she did not want to return to work with Associates. (Docket No. 45, Exhibit 20 at 4.)

16. On June 18, 1996, Dr. Pablo O. Pérez Torredo, a psychiatrist to whom plaintiff was referred for evaluation by the State Insurance Fund, issued his final psychiatric report regarding plaintiff's request for treatment. (Docket No. 45, Exhibit 16.)

17. In his report, Dr. Pérez diagnosed plaintiff with adaptive disorder with mixed emotional symptoms and recommended that she be referred for additional psychotherapeutic treatment. (Docket No. 45, Exhibit 16 at 3.)

18. On August 23, 1996, Associates notified plaintiff that her short-term disability benefits would expire on September 27, 1996 and notified her of her right to apply for long-term disability benefits. (Docket No. 45, Exhibit 5.)

19. Associates informed plaintiff via the August 23, 1996 letter, that she should apply for Social Security Disability Insurance benefits (hereinafter "SSDI") to supplement her income in case she applied for long-term benefits. (Docket No. 45, Exhibit 5.)

20. On September 25, 1996, plaintiff requested LTD benefits. (Docket No. 45, Exhibit 6.)

21. In her application, plaintiff certified that her emotional state did not allow her to concentrate and perform her job; that the date for her return to work was not available; and that she did not expect to return to any other occupation. (Docket No. 45, Exhibit 6 at 3.)

22. On November 8, 1996, the State Insurance Fund discharged plaintiff with a disability. (Docket No. 45, Exhibit 17.)

CIVIL 98-1645 (JAG)                                   6

23. By letter dated January 7, 1997, Prudential denied plaintiff's request for LTD benefits. (Docket No. 45, Exhibit 1, ¶ 9, Exhibit 7.)

24. Plaintiff appealed this decision, but her appeal was denied by letter February 25, 1997 based on a lack for medical evidence to support that her condition would prohibit her from performing the duties of her occupation as Branch Operations Assistant. (Docket No. 45, Exhibit 8.)

25. In the February 25, 1997 letter, plaintiff was informed of her right to appeal the denial of LTD benefits. (Docket No. 45, Exhibit 8.)

26. On March 19, 1997, plaintiff's employment with Associates was terminated effective February 28, 1997 because her short-term disability had expired, her application for LTD had been denied and she did not report to work. (Docket No. 45, Exhibit 1, ¶¶ 11-12, Exhibit 9.)

27. The March 19, 1997 letter states that as "[a] result of termination of your LTD claim, and since you have not returned to work, your employment with Associates will also end. For benefit purposes, we are using February 28, 1997 as the termination date." (Docket No. 45, Exhibit 1, ¶¶ 11-12, Exhibit 9.)

28. On April 15, 1997, Prudential reconsidered its earlier denial of LTD benefits for plaintiff, stating, "we have reviewed the additional medical documentation received, and are pleased to inform you that your claim has been approved with benefits payable from September 18, 1996." (Docket No. 45, Exhibit 10.)

29. As a result of the aforesaid, plaintiff was reinstated to her employment with Associates on LTD status. Under the Policy, plaintiff was entitled to receive 60% of her salary while under treatment. (Docket No. 45, Exhibit 1, ¶ 15, Exhibit 11.)

CIVIL 98-1645 (JAG)                                  7

30. The April 15, 1997 letter from Prudential informed plaintiff that if her recovery, and therefore her LTD status, was delayed, she could be required to apply for Social Security Disability Income (hereinafter "SSDI"). (Docket No. 45, Exhibit 1, ¶ 15, Exhibit 10 at 2.)

31. Plaintiff was granted SSDI benefits on July 7, 1997, retroactive to September 1996, as the Social Security Administration found that she had become disabled "under [its] rules" on March 20, 1996. (Docket No. 45, Exhibit 18.)

32. On April 29, 1998, Aetna sent plaintiff a letter in which it stated that "[b]ased upon the medical information we have, your claim has been approved." (Docket No. 45, Exhibit 12.)

33. On the April 29, 1998 letter, Aetna informed plaintiff that as a plan provision, she was required to file for SSDI benefits and that she "must provide [them] with proof that [she] did apply." (Docket No. 45, Exhibit 12.)

34. The April 29, 1998 letter clearly specified: "Failure to respond to this request and furnish proof that you have applied for SSDI within 30 days from the date of today's letter will mean automatic suspension of LTD benefits. Failure to respond within 30 days after your suspension will mean termination of your benefits." (Docket No. 45, Exhibit 12.)

35. Plaintiff refused to send Aetna a copy of the SSDI benefits approval letter, telling Aetna to "ask Prudential." (Docket No. 45, Exhibit 15 at 120-21.)

36. After receiving the April 29, 1998 letter, plaintiff told Aetna that she had sent the required SSDI documentation to Prudential, but that she refused to send them a photocopy of the letter again because "they had been so bad to" her. (Docket No. 45, Exhibit 15 at 133.)

CIVIL 98-1645 (JAG)                              8

37. On June 2, 1998, Aetna sent plaintiff a letter requesting once again that she inform regarding the status of her application for SSDI benefits. (Docket No. 45, Exhibit 13.)

38. On August 11, 1998, Aetna sent plaintiff a letter "termin[ating] [her] LTD benefits effective July 31, 1998." The termination was based on the fact that Aetna had not received documentation of a Social Security application. (Docket No. 45, Exhibit 14.)

39. Aetna also informed plaintiff in the August 11, 1998 letter that she was "entitled to a review of this benefit determination if [she had] questions or [did] not agree," which review must be filed within 60 days. (Docket No. 45, Exhibit 14.)

40. On October 1, 1998, Aetna sent plaintiff a letter denying her request for appeal dated September 9, 1998, because although "the letter indicated [plaintiff] had supplied Prudential with the social security award letter . . . [t]he file was reviewed and the document was not present." (Docket No. 45, Exhibit 19.)

41. After receiving the October 1, 1998 letter, plaintiff did not make any further efforts to obtain LTD benefits. (Docket No. 45, Exhibit 15 at 139.)

42. Plaintiff did not contact anyone at Associates regarding her availability or desire to return to work after she was denied LTD benefits in August, 1998. (Docket No. 45, Exhibit 15 at 146.)

43. Plaintiff has not communicated with anyone at Associates since March, 1997. (Docket No. 45, Exhibit 15 at 152.)

44. Plaintiff continues under psychiatric treatment and she has a monthly appointment with her psychiatrist, Dr. Walter Pagán. (Docket No. 45, Exhibit 15 at 105.)

CIVIL 98-1645 (JAG) 9

45. Plaintiff takes Prozac, Tranxene, and Klonopin, per Dr. Pagán's prescription. (Docket No. 45, Exhibit 15 at 7-8.)

46. Plaintiff has not made any attempt at finding another job because her psychiatrist, Dr. Walter Pagán, has told her that she "is still unable to work." (Docket No. 45, Exhibit 15 at 162.)[1]

In this case, plaintiff has failed to substantiate her controverted facts, leaving no genuine issue to be tried by a jury. She was never terminated by Associates. Instead, Estades voluntarily began receiving disability benefits in lieu of working and voluntarily decided to disregard Aetna's procedural requirements regarding the required proof of SSDI benefits she was receiving. (Docket No. 45, Exhibit 15 at 101-02, 120-21.)

II. Age Discrimination in Employment Act

The ADEA makes it illegal for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (1985). Plaintiff here alleges that she was constructively terminated due to her age, among other things. In a wrongful discharge case, Estades bears the ultimate burden of proving that she would not have been fired "but for her age." Serrano Cruz v. DFI Puerto Rico, Inc., 109 F. 3d 23, 25 (1st Cir. 1997); Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988).

Plaintiffs alleging disparate treatment under a statute like the ADEA usually proceed by turning to the McDonnell Douglas burden-shifting framework. McDonnel Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); see Reeves v. Sanderson Plumbing Prod.,

---

[1] Plaintiff claims that her "discharge" affected her to the point that she is unable to work indefinitely. However, her disability developed before her "discharge." Additionally, her inability to work since is not controverted.

CIVIL 98-1645 (JAG)                                    10

Inc., 530 U.S. 133, 134 (2000); Febres v. Challenger Caribbean Corp., 214 F.3d 57, 59-60 (1st Cir. 2000). In these cases, the plaintiff "must carry the initial burden . . . of establishing a prima facie case of . . . discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. at 802. The plaintiff must demonstrate that "she is a member of a protected group who has been denied an employment opportunity for which she was otherwise qualified. Such a showing gives rise to an inference that the employer discriminated due to the plaintiff's disability and places upon the employer the burden of articulating a legitimate, non discriminatory reason for the adverse employment decision." Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 251 (1st Cir. 2000); see Ayala-Gerena v. Bristol Meyers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996). This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the plaintiff's at all times. Laurin v. Providence Hosp., 150 F.3d 52, 58 (1st Cir. 1998). See also Baralt v. Nationwide Mut. Ins. Co., No. 00-1453, slip op. at 11 (1st Cir. May 24, 2001). "Once such a reason emerges, the inference raised by the *prima facie* case dissolves and the plaintiff is required to show . . . that the employer's proffered reason is a pretext for discrimination." Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d at 251. A pretextual finding does not automatically compel a verdict in favor of the plaintiff, however. A jury would then decide whether the adverse action was based on a discriminatory motive. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. at 133,-34; Fite v. Digital Equip. Corp., 232 F.3d 3, 6 (1st Cir. 2000).

A plaintiff may be relieved of the difficult task of having to rebut an employer's legitimate reason for termination by showing "the existence of direct evidence that a proscribed factor (such as age . . . ) played a motivating part in the disputed employment decision." Febres v. Challenger Caribbean Corp., 214 F.3d at 60; see Price Waterhouse v. Hopkins, 490 U.S. 228, 242 (1989) (O'Connor, J., concurring). Direct evidence consists

CIVIL 98-1645 (JAG) 11

of "evidence which, in and of itself, shows a discriminatory animus." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 96.

Plaintiff alleges that there is direct evidence that she suffered age discrimination at the hands of the "top management" at Associates. (Docket No. 71 at 6.) Mrs. Aurora Medina, the Human Resource Director, allegedly told plaintiff on many occasions that "she was too old." (Docket No. 71, Exhibit 2 at 75.) Also, Mr. Navarro, her supervisor, told her and her co-workers that he knew about the Arecibo I incident and if he had been the supervisor "she would not have been working in the company because he would have fired her and all the old people remaining in Associates." (Docket No. 71, Exhibit 2 at 80.) Her supervisor also made remarks like: "what happens is that you are too old." (Docket No. 71, Exhibit 2 at 82); "I would dare hire three young girls and without any training would perform better work than that which you are doing now." (Docket No. 50, Exhibit 2 at 82-83); when plaintiff complained about her workload, he would say "what happens is that you are old, Nydia, you are old." (Docket No. 71, Exhibit 2 at 87.) Also, Mr. Enoc Toro, one of the managers of the branch said: "I believe that Navarro is right you are too old, you can't do the work." (Docket No. 71, Exhibit 2 at 87.) Plaintiff argues that this evidence shows that at the very least, it is a contested fact that Estades was subject to a direct pattern of discrimination due to her age by Associates. While these may point to some discrimination, stray remarks do not satisfy plaintiff's burden of proving discrimination by direct evidence when the "remarks lack the necessary link between the alleged speaker's discriminatory remark and the adverse employment decision." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 96; see Price Waterhouse v. Hopkins, 490 U.S. at 277; Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 581 (1st Cir. 1999). There is no evidence that even if these remarks were made, that they somehow led to Estades' alleged dismissal from Associates. See, e.g., Rivera-Flores v. Puerto Rico Tel. Co.,

CIVIL 98-1645 (JAG)                    12

64 F.3d 742, 745 (1st Cir. 1995). Even if we assume *arguendo* that she was in fact terminated by Associates, Estades' evidence does not prove that remarks about her age were the precursor to that termination especially when she also alleges that the termination could have occurred due to her involvement in exposing fraudulent activity by other Associates employees or discrimination due to her emotional disability.

Defendants claim that there was never a termination, arguing that there is not enough evidence to even turn to the McDonnell Douglas analysis. The plaintiff failed to establish the very basic requirements of the *prima facie* case, primarily that there was an unlawful discharge, rendering any shifting of burden moot.

To successfully overcome summary judgment for an ADEA claim, the plaintiff must show: (1) that she was a member of a protected age group (at least forty years old); (2) that she was meeting Associates' legitimate job expectations; (3) that she lost her position through an adverse employment action, and (4) that Associates had a continuing need for the services she had been rendering and were subsequently performed by one with the same or similar qualifications as the plaintiff. Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Cardona Jiménez v. Bancomercio, 174 F.3d 36, 41 (1st Cir, 1999).

In this case, the first, second and fourth requirements are not at issue. Estades was in fact fifty years old when she was "terminated" and indeed a member of a protected age group. (Docket No. 45, Exhibit 6 at 5.) She received satisfactory evaluations throughout her employment at Associates. (Docket No. 50, Exhibit 4 at 98-117.)[2] It is also uncontested that she was replaced by Maritza Colón, who was thirty-four years old and had

---

[2] Estades argues that it is controverted that she met her employer's legitimate job expectations. However, defendants never contest that while she worked for Associates she met their expectations.

CIVIL 98-1645 (JAG)                             13

a similar educational background and preparation for the position. (Docket No. 50, Exhibit 4 at 12, ¶ 15.)[3] I focus then on the third requirement.

The third prong of an ADEA claim requires that the employee be unjustly discharged. Associates argues that Estades was never discharged, but that she voluntarily went on disability leave and willfully failed to comply with Aetna's procedural requirement that she supply Aetna with evidence that she had applied for SSDI benefits. Plaintiff argues that she was constructively discharged due to her emotional illness once her benefits were terminated by Aetna and was never asked back to work.

Estades was fully aware at all times that noncompliance with Aetna's evidence request would summarily cancel her LTD benefits as well as her employee status. The March 19, 1997 letter sent to plaintiff by Prudential states that "[i]n order to be considered an employee, a person must either be actively at work, on an approved Leave of Absence, or on Long Term Disability." (Docket No. 50, Exhibit 5.) The evidence clearly shows that Estades started receiving LTD benefits as of April 15, 1997 and therefore was considered an employee of Associates. Plaintiff was not required to make an insurance coverage analysis as claimed to realize that she was reinstated when by reading this letter she would have known of her status as an employee on long term disability leave. While it may be understandable that plaintiff was frustrated and perhaps inconvenienced in having to re-send her SSDI benefits approval letter to Aetna when she had already sent it to Prudential, Aetna's request was not unreasonable or burdensome.[4] Additionally, it

---

[3] While Estades says her replacement by Ms. Colón is controverted, Associates never contests this fact. Whether Ms. Colón was a substitute or permanent replacement is irrelevant as Estades was never able to return to work after her disability developed.

[4] Plaintiff alleges that she sent Associates' disability carrier the requested document. While she may have sent it to Prudential, Aetna never received it. As Associates' disability

CIVIL 98-1645 (JAG)                                    14

seems clear that had this simple request been fulfilled, plaintiff's benefits would never have been terminated. Moreover, Aetna, not Associates, made the final decision to cancel Estades' benefits. These points make Estades' claim that she was willfully terminated due only to her age even more tenuous.

Plaintiff argues that it is evident that Associates exerted pressure on Estades to force her to leave her job through harassment centered around her advanced age, constituting a constructive discharge. Defendants riposte that her claim of constructive discharge must fail because she did not resign, but rather went on paid disability leave under Associates' health benefits plan. The ADEA prohibits an employer from engaging "in a calculated, age-inspired effort to force an employee to quit." Suárez v. Pueblo Int'l, Inc., 229 F.3d at 54; see, e.g., Ramos v. Davis & Geck, Inc., 167 F.3d 727, 731-33 (1st Cir. 1999). When analyzing a constructive discharge claim, the court must be satisfied that the new working conditions would have been "so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." Suárez v. Pueblo Int'l, Inc., 229 F.3d at 54; see Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 480 (1st Cir. 1993).

Estades was not constructively discharged by Associates. While it is true that she worked harder, it is clear that Associates was short on personnel and that other employees were also required to work harder. (Docket No. 60, Exhibit C at 41.) Apparently, as a consequence of strenuous working conditions, Estades was diagnosed as suffering from depression and went on paid disability leave. The First Circuit Court of Appeals has stated that a constructive discharge claim cannot succeed when the employee has not left the employment. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir. 1993); Pedro-Cos v. Contreras, 976 F.2d 83, 85 (1st Cir. 1992); see Suárez v. Pueblo Int'l, Inc.,

---

carrier, Aetna could reasonably require at least one copy of the benefits letter from the plaintiff.

CIVIL 98-1645 (JAG)                        15

229 F.3d at 49. Estades did not resign from Associates. She went on disability leave requesting long term disability benefits. Her employment with Associates ended due only to her refusal to supply Aetna with an SSDI benefits approval letter.[5] Therefore, Estades cannot prove that she was constructively discharged since she neither resigned nor was terminated.

### III. Americans With Disabilities Act

The ADA prohibits discrimination against qualified individuals with a disability. It provides that an employer shall not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a); see Sutton v. United Airlines, Inc., 527 U.S. 471, 477 (1999).

To establish a *prima facie* case of discrimination in violation of ADA, Estades must establish (1) that she suffers from a disability within the meaning of the Act; (2) that she was able to perform the essential functions of the job, either with or without reasonable accommodation; and (3) that Associates discharged her because of that disability. Feliciano v. Rhode Island, 160 F.3d 780, 784 (1st Cir. 1998).

Defendants contest that Estades meets the first requirement. While Estades was diagnosed as suffering from a major depression, defendants state that she is not a qualified individual under ADA standards. See Criado v. IBM Corp., 145 F.3d 437, 442 (1st Cir. 1998); Ralph v. Lucent Tech., Inc., 135 F.3d 166, 168 (1st Cir. 1998) (citing that depression can constitute a disability under the ADA.) Defendants also argue that since

---

[5] Plaintiff states her termination as a fact in controversy which it is not. She decided to stop receiving her disability benefits, therefore, she personally instigated the termination of her benefits.

CIVIL 98-1645 (JAG)                                    16

Estades was completely incapacitated, she was not able to perform even with accommodations at the time Associates was made aware of her disability. Plaintiff counters that when she asked for an accommodation, she was refused and that Associates was aware of her increasingly serious emotional problem. Finally, defendants maintain that the plaintiff was never discharged. As discussed previously under the ADEA claim, Estades never was terminated or discharged. Therefore, plaintiff fails to establish the third prong requiring the employer to discharge the employee for an ADA claim as well.

A "qualified individual with a disability" is defined under the ADA as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8); see García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir. 2000). Defendants argue that Estades could not perform the essential functions of her job with or without accommodation when her disability became known. Plaintiff alleges that Associates caused her disability and should therefore be seen as a qualified individual for her ADA claim, and that she requested a restructuring of her assigned duties and the distribution of her work. (Docket No. 50 at 19.) It is uncontested that Estades has the skills and experience required to perform her job before her disability developed. However, her doctor told her she was unable to work and did not know when she could return to work.[6] This diagnosis directly contradicts her allegations that she could perform her job with a reasonable accommodation.

Since Estades was receiving SSDI benefits due to her total incapacitation, she must "proffer a sufficient explanation" to resolve the contradiction between her claim that she

---

[6]Estades claims that her requests for reinstatement were never afforded. However, it is uncontested that Estades' physicians have yet to release her from fully disabled status in order for her to return to any type of work.

CIVIL 98-1645 (JAG)                                17

is completely disabled for SSDI purposes and her claim that she is an "otherwise qualified individual" to have standing for an ADA complaint. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999); Sheehan v. Marr, 207 F.3d 35, 40 (1st Cir. 2000). Estades has not provided evidence that explains this inconsistency. In addition to the SSDI benefits, Estades received LTD benefits for more than two years based on the assertion that she was totally disabled. These facts clearly contravene that plaintiff was a qualified individual under ADA. Whether or not Associates created the disability –as Estades claims to justify the inconsistency– is irrelevant to this particular claim as Estades was never able to return to work once she was diagnosed with a disability regardless of who or what caused the disability. She has not presented any evidence that she could, now after being diagnosed with a major depression, perform her job even with a reasonable accommodation to be considered a qualified individual. With no further evidence to explain this inconsistency, Estades' claim that she is a qualified individual for ADA purposes must fail.

Under the ADA, a failure-to-accommodate claim may develop when an ADA covered business does not make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . , unless [the employer] . . . can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A); see Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999).

Plaintiff argues that she was qualified to perform her job at all times during her employment and that Associates required her to perform the duties regularly performed by three employees, leading to her mental incapacity. It was not until after she requested reasonable accommodation that her condition impaired her ability to work. Therefore, she alleges that she was denied a reasonable accommodation first, that then she applied for

CIVIL 98-1645 (JAG)                              18

benefits and finally was discharged by Associates knowing that she was a protected person under ADA.

However, "[t]he ADA imposes liability on an employer for 'not making reasonable accommodations to the *known* physical or mental limitations' of an employee." Reed v. Lepage Bakeries, Inc., 244 F.3d 254, 260-61 (1st Cir. 2001) (quoting 42 U.S.C. § 12112(b)(5)(A)). When Estades requested the alleged reasonable accommodation, she had no knowledge she was disabled nor could Associates reasonably have known that she was a protected person as she had not yet even received diagnosis or treatment for her disability.[7] Estades became aware of her disability only after she reported to the State Insurance Fund. She cannot expect Associates to provide a reasonable accommodation for a disability not even she knew she had. Defendants argue that Estades never informed Associates that she was suffering from an emotional condition that did not allow her to work. Rather, her complaints were general in nature regarding having too much work and these were never explained as stemming from a known disability. The ADA's reasonable accommodation requirement has to be "sufficiently direct and specific" and it has to give notice to the employer that the employee needs a "special accommodation." Reed v. Lepage Bakeries, Inc., 244 F.3d at 261 (quoting Wynne v. Tufts Univ., 976 F.2d 791, 795 (1st Cir. 1992)). "At the least, the request must explain how the accommodation requested is linked to some disability. The employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace." Reed v. Lepage Bakeries, Inc., 244 F.3d at 261. Estades presents no evidence that she ever informed Associates that her requests for assistance were made to directly

---

[7] While Estades claims that she was qualified to perform her job duties at the time she requested a reasonable accommodation, even if her requests were deemed "reasonable," Estades never linked her need for accommodation with the fact that she had a disability.

CIVIL 98-1645 (JAG)                    19

relieve her emotional illness. Therefore, if Associates was not aware that Estades was suffering from a disability, they cannot be held liable for not providing her with a reasonable accommodation. Estades' demands that Associates hire more employees or provide her with an assistant were never posed as a request for accommodation. They were presented as general complaints of having too much work for one person.

As to the reasonable accommodation limitation of "undue hardship on the operation of the business" of the employer, the ADA provides that "reasonable accommodation" may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision or qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). Hiring of new employees is a far greater burden to request than the less drastic suggestions the law actually makes. Additionally, the First Circuit has held that "the ADA does not require an employer to 'reallocate job duties in order to change the essential function of a job.'" Soto-Ocasio v. Federal Exp. Corp., 150 F.3d 14, 20 (1st Cir. 1998) (quoting Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995)). An employer is also not required to hire additional personnel to ensure that the employee could perform his job. Equal Employment Opportunity Comm'n v. Amego, Inc., 110 F. 3d 135, 148 (1st Cir. 1997). While defendants have not proffered any evidence that hiring plaintiff an assistant would necessarily be an undue hardship, hiring additional employees is not a reasonable accommodation for plaintiff to expect under the current law. Therefore, Estades' requests for an assistant or a lighter workload do not constitute "reasonable" accommodations under the ADA.

CIVIL 98-1645 (JAG)                                        20

### IV. Conclusion

For the forgoing reasons, mainly Estades having failed to establish a *prima facie* case of discrimination under ADEA and ADA, I recommend that defendants' motion for summary judgment be granted. Additionally, the court should decline to exercise supplemental jurisdiction over the state law claims. Therefore, I recommend that the case be dismissed in its entirety.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 11th day of June, 2001.

JUSTO ARENAS
United States Magistrate Judge