UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NYDIA ESTADES NEGRONI

    **Plaintiff**

    v.                     Civil No. 98-1645 (JAG)

THE ASSOCIATES CORP OF NORTH
AMERICA; ASSOCIATES FINANCIAL
SERVICES, et al.
    **Defendants**



**OPINION AND ORDER**

GARCIA-GREGORY, D. J.[1]

On July 18, 2000, defendants the Associates Corp. of North America ("Associates Corp."), Associates Financial Services ("Associates"), and others (collectively "defendants"), moved for summary judgment against plaintiff Nydia Estades Negroni's ("Estades") claims brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, et seq., the American with Disabilities Act ("ADA"), 42 U.S.C. §12182, et seq., and supplemental state claims under Puerto Rico's Law 80 and Law 100 (Docket No. 45). On April 23, 2001, the motion was referred to U.S. Magistrate Judge Justo Arenas for a report and recommendation (Docket No. 83). On June 13, 2001, the Magistrate Judge

---

[1] Alejandro J. Cepeda-Diaz, a second year student at the University of Puerto Rico School of Law, assisted in the research and preparation of this opinion.

recommended that the Court grant defendants' motion and dismiss Estades's claims (Docket No. 85). On June 25, 2001, Estades filed objections to the report and recommendation (Docket No. 86). Upon review of the objections, the Court adopts the Magistrate Judge's report and recommendation.

### FACTUAL BACKGROUND[2]

Estades was hired by Associates in 1986. Between 1989 and 1990, Estades became aware of certain financial irregularities regarding loans being carried out by some of her co-workers in Associates's Arecibo I branch. In 1992, Estades reported the irregularities to Mr. Juan Irizarry, Group Assistant Vice President at Associates, through his secretary, Ms. Haydée Lopez.
As a result of Estades's allegations of fraud, several audits were performed and in 1993, several of her co-workers, including her supervisors, were fired.

In March 1996, Estades complained of chest pains and visited a doctor. The doctor diagnosed Estades as suffering from severe depression. On March 21, 1996, Estades, following her doctor's recommendation, reported to the State Insurance Fund ("SIF"). After an examination by the SIF, Estades was declared to be disabled and was submitted to medical treatment on leave. On April 9, 1996, she requested short-term disability benefits under

---

[2] The facts are taken from the Magistrate Judge's Report and Recommendation.

2

Associates' employee benefits policy (the "Policy"). The Policy was administered by Associates Corp. and managed by Prudential Healthcare Group ("Prudential"). Estades received Associates' short-term disability benefits from March 1996 to September 1996, the maximum date benefits were available. As part of her short-term benefits, Estades received 100% of her salary. On May 2, 1996, Ms. Carmen I. Hernandez, a social worker with the SIF, interviewed Estades in connection with her request for treatment. During the interview, Estades stated that she did not want to return to work at Associates. SIF referred Estades to Dr. Pablo O. Perez Torredo, a psychiatrist, for evaluation. On June 18, 1996, Dr. Perez Torredo issued his final psychiatric report regarding Estades's request for treatment. Dr. Perez Torredo diagnosed Estades as suffering from adaptive disorder with mixed emotional symptoms and recommended that she be referred for additional psychotherapeutic treatment.

On August 23, 1996, Associates notified Estades that her short-term disability benefits would expire on September 27, 1996. Associates further informed Estades of her right to apply for long-term disability benefits ("LTD") and recommended that she also apply for Social Security Disability Insurance benefits ("SSDI") to supplement her income. On September 25, 1996, Estades applied for LTD. Estades certified in her application that her emotional state did not allow her to concentrate on and perform her job functions.

Furthermore, she stated that the date for her return to work was not available, and that she did not expect to return to any other occupation. On November 8, 1996, SIF discharged Estades with a disability. In a letter dated January 7, 1997, Prudential denied Estades's request for LTD based on lack of medical evidence supporting her claim that her condition kept her from performing her duties as Branch Operations Manager. Furthermore, she was informed of her right to appeal the denial of LTD. Estades appealed Prudential's decision in a letter dated February 25, 1997. On March 19, 1997, Estades's employment with Associates was terminated with an effective date of February 28, 1997, inasmuch as her short-term disability benefits had expired, her application for LTD had been denied, and she had not reported to work. On April 15, 1997, Prudential reconsidered its denial of LTD and approved Estades's request retroactively to September 18, 1996. As a result, Estades was reinstated in her employment with Associates on LTD status. As part of her LTD, Estades was entitled to receive 60% of her salary while undergoing treatment. Prudential further informed Estades that, if her recovery was delayed, she could be required to apply for SSDI. On July 7, 1997, Estades was granted SSDI retroactively to September 1996, inasmuch as the Social Security Administration found that, under its rules, she had become disabled on March 20, 1996.

On April 29, 1998, Aetna US Healthcare ("Aetna"), Associates'

new health insurance carrier, sent Estades a letter stating that, based on the medical information in their possession, her claim had been approved. Aetna further informed Estades that, under a plan provision, she was required to file for SSDI and must provide them with proof of application. The letter further informed Estades that failure to comply within thirty days would result in an immediate suspension of benefits. Furthermore, failure to comply within thirty days from the suspension of benefits would result in termination of benefits.

Estades refused to comply with Aetna's request. Estades told Aetna that they should ask Prudential for a copy of her SSDI approval letter. Estades stated that she refused to provide Aetna with a copy of the letter because "they had been so bad to her." On June 2, 1998, Aetna sent Estades a second letter requesting that she inform them on the status of her SSDI application. On August 11, 1998, Aetna sent Estades a letter informing her that her LTD benefits were terminated effective July 31, 1998, inasmuch as Aetna had not received from Estades proof that she had at least applied for SSDI. Aetna further informed Estades that she was entitled to petition for a review of their decision within sixty days. On October 1, 1998, Aetna sent Estades a letter denying her appeal since they had not received a copy of her SSDI award letter. After October 1, 1998, Estades did not make any further efforts to obtain LTD. Estades has not contacted Associates regarding her

availability or desire to return to work after she was denied LTD in August, 1998. Estades is currently under psychiatric treatment with Dr. Walter Pagan and takes Prozac, Tranxene, and Klonopin. Estades has not made any attempt to find another job because her psychiatrist has told her she is still unable to work.

## DISCUSSION

A.  <u>Summary Judgment Standard.</u>

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); <u>See Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." <u>See</u> Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented before the Court, the opposing party has the burden of demonstrating that a trial worthy issue exists that would warrant the Court's denial

6

of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. See Suarez v. Pueblo Int'l., Inc., 229 F.3d 49 (1st Cir. 2000).

In order for the factual controversy to prevent summary judgment the contested fact must be "material" and the dispute over it must be "genuine." "Material" means that a contested fact has the potential to change the outcome of the suit under the governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is well settled that "'[t]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." Id., at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115

AO 72A (Rev. 8/82)

(1st Cir. 1990). When carrying out that task, the court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

B. <u>Standard for Reviewing a Magistrate Judge's Report and Recommendation.</u>

A District Court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a report and recommendation. <u>See</u> 28 U.S.C. §636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 503. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the Magistrate's report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. <u>See</u> 28 U.S.C. §636(b)(1). Since Estades has filed timely objections to the Magistrate Judge's report and recommendation, the Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. <u>See United States v. Raddatz</u>, 447 U.S. 667, 673 (1980); <u>Lopez v. Chater</u>, 8 F.Supp.2d 152, 154 (D.P.R. 1998).

C. <u>Estades's ADEA Claims.</u>

"In an ADEA case, [Estades] must show 'that: 1) [s]he was at least 40 years old; 2) met the employer's legitimate job expectations; 3) was fired or constructively discharged; and 4) that age was not treated neutrally.'" <u>Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.</u>, 152 F.3d 17, 24 (1st Cir. 1998)

8

(citing <u>Ruiz v. Posadas de San Juan Associates</u>, 124 F.3d 243, 247 (1st Cir.1997)). The third prong of an ADEA claim requires that the employee be discharged. The Magistrate Judge found that Estades was not terminated from her employment nor constructively discharged by Associates in 1998, inasmuch as she did not resign, but rather went on paid disability leave under Associates' health benefits plan. Subsequently, Estades voluntarily caused the cancellation of her long term disability benefits, and as a direct consequence thereof further cause her employment status with Associates to cease. (Docket No. 85 at 13-15).

Estades disputes the Magistrate Judge's finding and avers that whether she was discharged or not is a genuine issue of material fact. (Docket 86 at 12). To oppose the Magistrate Judge's finding, Estades has belatedly submitted a letter dated on May 2, 1997, stating her desire to return to work on June 1, 1997. (Docket 93). This evidence, however, is immaterial to the disposition of this case, insofar as it does not controvert the Magistrate Judge's conclusion. The May 1997 letter refers to the time when Estades' short-term disability benefits ended in 1997 and she was originally terminated. Nevertheless, her request to return to work on June 1, 1997, became moot when Estades received long-term disability benefits instead. It is uncontested that on April 15, 1997, Prudential granted Estades' request for long-term disability benefits retroactively and she was reinstated to her employment

9

with Associates on disability status. (Docket 85 at 6). Estades continued to receive long-term disability benefits as an Associates' employee until July 31, 1998, when Aetna terminated Estades' long-term disability benefits due to Estades' refusal to comply with Aetna's procedural requirement to supply Aetna with a copy of Estades' SSDI approval letter. (Docket No. 85 at 13-15). Although it may be understandable that Estades was frustrated and perhaps inconvenienced in having to re-send her SSDI benefits approval letter to Aetna when she had already sent it to Prudential, Estades was fully aware at all times that noncompliance with Aetna's reasonable evidence request would summarily cancel her LTD benefits as well as her employee status. (Id.).

Estades avers that she was constructively discharged due to her emotional illness once her benefits were terminated by Aetna and was never asked back to work. Estades, however, did not contact Associates regarding her availability or desire to return to work after Aetna terminated Estades' long-term disability benefits. (Docket 85 at 8). Accordingly, we adopt the Magistrate Judge's conclusion and dismiss Estades's ADEA claims inasmuch as she did not suffer an adverse employment action on the part of Associates.

D.   Estades's ADA Claims.

"To constitute a prima facie case of employment discrimination under ADA, [Estades] must show that: (1) [s]he was 'disabled' as

10

that term is defined in ADA; (2) [s]he was qualified, with or without accommodation, to do [her] job; (3) [s]he was discharged; and (4) [s]he was replaced by a non-disabled person." Gutierrez-Usera v. Puerto Rico Telephone Co., 967 F.Supp. 35, 38 (D.P.R. 1997).

Estades failed to proffer sufficient evidence that she could perform her duties with or without any reasonable accommodations as required by ADA. See 42 U.S.C. §12111(8) and (9). The hiring of an assistant or additional employee, as Estades requested, does not constitute a "reasonable" accommodation. See Equal Employment Opportunity Commission v. Amego, Inc., 110 F.3d 135 (1st Cir. 1997). Furthermore, there is no evidence that Estades requested any accommodations after she was diagnosed with a disability and informed Associates of the fact. Estades's requests were made prior to being dignosed and were understood to be general complaints of having too much work. ADA claims require that requests for accommodation be expressly made and must show a link between the accommodation and a disability. See Cruz Carrillo v. AMR Eagle, Inc., 148 F.Supp.2d 142, 146 (D.P.R. 2001).

Accordingly, Estades's ADA claims must be dismissed inasmuch as she does not meet the statute's criteria for eligibility.

E.  Supplemental State Claims.

Estades brought supplemental state claims under Puerto Rico's Law 80 and Law 100. The Court refuses to exercise supplemental

jurisdiction over these claims inasmuch as no federal claims to ground original jurisdiction remain before the Court.

## CONCLUSION

For the foregoing reasons, the Court adopts the Magistrate Judge's report and recommendation. The Court **GRANTS** defendants' motion for summary judgment and dismisses all federal claims against defendants with prejudice. The supplemental state claims are dismissed without prejudice pursuant to 28 U.S.C. §1367(c)(3), inasmuch as no federal claims to ground jurisdiction remain in this case.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of May 2002.

_____
JAY A. GARCIA-GREGORY
United States District Judge